# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                 )
**IN RE APPLICATION OF BARNWELL** )
**ENTERPRISES LTD AND JITENDRA** )
**CHHOTABHAI PATEL FOR AN**     )       **Case No. 16-mc-2581 (RC/GMH)**
**ORDER PERMITTING DISCOVERY**   )
**PURSUANT TO 18 U.S.C. § 1782**    )
_____)

## MEMORANDUM OPINION

      This matter was referred to the undersigned for full case management. Petitioners Barnwell Enterprises Limited and Jitendra Chhotabhai Patel (collectively, "Petitioners") have petitioned this Court for an Order pursuant to 28 U.S.C. § 1782 permitting them to take expedited discovery from Emerging Capital Partners ("ECP" or "Respondent"), a private equity firm manager incorporated in the District of Columbia, to use in litigation currently pending before courts in Uganda and Mauritius, as well as in possible proceedings that Petitioners have yet to initiate in other jurisdictions. _See_ Application for Order Permitting Discovery [Dkt. 1]. After the matter became ripe for adjudication, the Court held a hearing to address the parties' arguments. Upon consideration of the parties' filings and the entire record herein,[1] the Court finds that Petitioners should be permitted to take discovery from ECP in this jurisdiction subject to the time and subject-matter restrictions described below.

## BACKGROUND

      Petitioners seek discovery from ECP in connection with pending lawsuits in Uganda and Mauritius and "possibly other proceedings to be filed in East Africa, the United Kingdom, and

---

[1] The relevant docket entries for the purposes of this Memorandum Opinion are: (1) Petitioners' Memorandum in Support ("Mot.") [Dkt. 1-1]; (2) Respondent's Memorandum in Response ("Resp.") [Dkt. 8]; (3) Petitioners' Reply Memorandum ("Reply") [Dkt. 9]; and (4) the Transcript of the April 25, 2017 Discovery Hearing ("TR.") [Dkt. 13]. All citations to page numbers within a particular document are to the ECF docket page numbers for the document.

other foreign jurisdictions." *See* Mot. at 4. The facts from the pending litigation—and from any other litigation that Petitioners may bring related to this application—stem from Petitioners' business dealings in East Africa. To summarize, Petitioner Patel and two others founded an infrastructure construction company, Spencon International Limited ("Spencon"), in Mauritius in 1979. *Id.* at 5. Petitioner Patel is also the sole shareholder of Petitioner Barnwell Enterprises Limited, a Mauritian private investment company with a shareholding interest in Spencon. *Id.* at 4. As Spencon's business across East Africa grew, Spencon's original shareholders decided to increase the company's capital base. *Id.* at 5–6. Accordingly, in 2006 and 2007, ECP Africa FII Investments LLC ("ECP Africa"), one of ECP's investment vehicles incorporated under the laws of Mauritius, purchased two promissory notes from Spencon for a total of fifteen million dollars that ECP Africa could convert into Spencon common stock after the satisfaction of certain conditions. *Id.* at 6. ECP, which manages dozens of investments across Africa, manages ECP Africa pursuant to contract and owns less than one percent of its equity. *See* Resp. at 2.

In 2009, ECP Africa converted the aggregate principal amount of the promissory notes plus interest into Spencon common stock, which amounted to approximately thirty-eight percent of Spencon's shares. Mot. at 6. At the same time, ECP Africa entered into a number of agreements with the other shareholders—including a put option agreement, a shareholder's agreement, and a share pledge agreement—that provided ECP with the right to require Spencon's original shareholders to buy back all of ECP Africa's shares in Spencon, gave ECP Africa fifty percent control of Spencon's board of directors, and required Spencon's original shareholders to pledge their remaining shares to secure their obligations to buy back ECP Africa's shares under the put option agreement, respectively. *Id.* at 8. One of Spencon's shareholders did not pledge his shares, which

resulted in those shares being dispersed between the remaining shareholders, including ECP Africa. *See* Patel Declaration [Dkt. 1-2] at ¶ 17. Around this time, Petitioners believe that NP Sharma, one of Spencon's cofounders, stole approximately five million dollars from the company. *Id.* at ¶ 19. Petitioners allege that ECP Africa failed to act on NP Sharma's alleged theft, took steps to conceal the misappropriated funds, and later worked with NP Sharma to improperly sell off more of Spencon's assets. *See* Mot. at 6, 10, 12–13.

In 2011 and 2012, following a series of setbacks between the original shareholders and ECP Africa regarding the business and management of Spencon, a number of shareholders challenged the validity of ECP Africa's three agreements. *See* Resp., Ex. A [Dkt. 8-2] at ¶ 20. ECP Africa, in turn, exercised its put right option in February 2013 and filed a request for arbitration with the London Court of International Arbitration ("LCIA"), the governing tribunal pursuant to the put option agreement. Mot. at 8; Resp. at 2–3. In February 2014, the LCIA determined that the put option agreement was valid and binding, at around which point ECP Africa exercised its right under the share pledge agreement to transfer the original shareholders' shares to ECP Africa as an award for the execution of the put option agreement. *See id.*; *see also* Mot. at 9–12.

As a result of this transfer, ECP Africa accumulated approximately ninety-eight percent of Spencon's shareholdings. *Id.* at 13. After acquiring these shares, ECP Africa appointed four individuals to Spencon's board of directors: Carolyn Campbell, Bryce Fort, Andrew Brown, and Namita Shah. *Id.* at 22. These individuals are high-ranking employees of ECP, not ECP Africa, and have been serving as directors of Spencon since early 2014. *Id.* at 22–23; *see also* Reply at

4–5.[2]  Petitioners believe that ECP Africa's transfer of shares and its actions while managing Spencon afterwards were unlawful, and that these four individuals have information related to these decisions in their possession as ECP employees.  *See* Mot. at 12–14; *see also* Reply at 4–5.

Accordingly, on May 20, 2015, Petitioner Barnwell Enterprises Limited filed an action in the Supreme Court of Mauritius, Commercial Division, against ECP Africa and several others, not including ECP.  *See* Exhibits to Declaration of Petitioner Patel [Dkt. 1-3] at 44–60.  The original complaint alleges that ECP Africa unlawfully misappropriated the original shareholder's pledged shares of Spencon in 2014 and mismanaged Spencon thereafter, and demands fifty million dollars in damages.  *Id.* at 54–58.  In an amended complaint filed in Mauritius on January 20, 2017, however, Petitioner Barnwell Enterprises Limited focuses solely on the legality of the transfer of shares, dropping the claim for fifty million dollars in damages and the allegations of mismanagement.  *See* Exhibit D [Dkt. 8-5] at 12–14; *see also* Exhibit E [Dkt. 8-6] at 2 ("[Petitioner Barnwell Enterprises Limited] will now only canvass the legality of the transfer of the shares.").[3]

Likewise, on August 30, 2016, Petitioner Patel filed an action in the High Court of Uganda at Kampala against, among others, ECP Africa, alleging that ECP Africa fraudulently mismanaged Spencon and its assets and employees such that the company is "in a calamitous financial condition threatening its very existence."  Exhibits to Declaration of Petitioner Patel [Dkt. 1-3] at 65.  Petitioner Patel also alleges that, due to ECP Africa's mismanagement of Spencon, ECP Africa is liable to several banks in Uganda for any funds due to a number of personal guarantees issued in his name on behalf of Spencon.  *Id.* at 71.  Additionally, Petitioners claim to be contemplating

---

[2] According to Respondent's counsel's representations at the hearing, one of these individuals is in the United States, two are in Kenya, and one is in France.  *See* TR. at 93:19–94:4.

[3] At the hearing in this matter, counsel for Petitioners indicated that Petitioner has the right to seek damages in the Mauritian case if the court determines that the transfer of shares was illegal.  *See* TR. at 11:7–12:12.  In fact, according to Petitioners' counsel, Petitioner has moved to amend the complaint in that case to reassert damages.  *Id.* at 20:1–20:4.

bringing another action in a separate foreign jurisdiction, although no such action has been filed. *See* Mot. at 14.

Presently before the Court is Petitioners' application for discovery pursuant to section 1782, filed on December 22, 2016. *See* Mot. Petitioners' application includes twenty-one discovery requests seeking from Washington-based ECP—not ECP Africa—various "oral and documentary (documents and communications) evidence" pertaining to the conduct described above. *See id.* at 29, 39–40.[4] Specifically, Petitioners request that ECP provide them with:

1. All documents and communications concerning NP Sharma's misappropriation of Spencon funds.
2. All documents and communications concerning payments to NP Sharma since 2014.
3. All agreements entered into NP Sharma since 2014.
4. All documents and communications concerning efforts to sell Spencon to any third-parties between 2009 and present.
5. All documents and communications concerning the appointment of Grant Ramnauth, Carolyn Campbell, Namita Shah, Andrew Brown, Bryce Fort, Marc Sullivan, Ron Series, Andrew Ross and Steve Haswell to Spencon's Board of Directors.
6. All documents and communications concerning payments made to directors, managers and officers of Spencon since 2014.
7. All documents and communications concerning expenses charged to Spencon by directors, officers and managers since 2014.
8. All documents and communications concerning bids submitted by Spencon for new business and new contracts obtained since 2014.
9. All documents and communications concerning CRA.[5]
10. All documents and communications concerning the sale of Spencon assets to CRA or any other party.
11. All documents and communications concerning Sanghani.[6]
12. All documents and communications concerning the Akashas.[7]

---

[4] Though originally framed as a request for "oral" deposition testimony, counsel for Petitioners conceded that the instant section 1782 application should be construed as only seeking document discovery. *See* TR. at 27:2–29:21.

[5] CRA stands for Construction Resources Africa Limited, a corporation that Petitioners believe was created by the current CEO and CFO of Spencon on September 8, 2016 to accept asset transfers from Spencon. *See* Mot. at 15, 36.

[6] Sanghani refers to Manoj Sanghani, an individual that Petitioners believe received the proceeds from the sale of Spencon's assets after ECP Africa took control of the company in 2014. *See* Mot. at 16, 36.

[7] The Akashas refers to the Akasha family, a Kenyan family that Petitioners claim the current ECP-Africa-appointed CEO of Spencon identified to Petitioner Patel as a potential buyer of Spencon's majority interests in a real estate development company, Spedec. *See* Mot. at 19–20, 36.

13. All documents and communications concerning anti-corruption/anti-bribery policies distributed at Spencon since 2014.

14. All documents and communications concerning KAKS and KTS.[8]

15. All weekly budgets reviewed by ECP Directors.

16. All documents and communications concerning other debt-collection agencies.

17. All documents and communications between GN Reddy and ECP Directors since 2014 concerning KTS, KAKS or any other debt-collection vendors.

18. All documents and communications concerning due diligence conducted prior to authorizing payments to KTS, KAKS or any other vendors.

19. All documents and communications with the CID[9] concerning Spedec or Kasarani[10] and the Patels.

20. All documents and communications concerning Spencon's interest in Spedec.

21. All documents and communications concerning Kasarani.

*Id.*

## LEGAL STANDARD

Section 1782 of Title 28 of the United States Code authorizes a district court, in its discretion, to order a person who resides or may be found in that district to provide discovery in the United States "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). The court "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or thing." *Id.* To the extent that the court does not order otherwise, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.*

---

[8] KAKS refers to KAKS Limited and KTS refers to Katchung Technical Services, two third-party entities in Uganda that Petitioners believe have worked with Spencon after ECP Africa took control of the company in 2014. *See* Mot. at 17–18, 36.

[9] According to Petitioners, CID stands for the Criminal Investigation Division, which Petitioners identify as the arm of the Kenyan government responsible for investigating and bringing criminal cases. *See* Mot. at 19, 36.

[10] According to Petitioners, Kasarani is a valuable piece of Kenyan property owned by Spedec, a real estate development company and one of Spencon's subsidiaries. Spencon owns fifty-one percent of Spedec and Petitioner Patel's son owns the remaining forty-nine percent of the company. *See* Mot. at 19–20, 36.

"[A] district court is not required to grant a [section] 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Instead, consideration of a section 1782 petition calls for a two-step inquiry. A court must first consider "whether it has the authority to grant the request" and, second, "whether it should exercise its discretion to do so." *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011) (citing *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005)). In deciding if it has such authority, a court must determine whether the person from whom discovery is sought resides in its district, whether the discovery sought is for use in a proceeding before a foreign or international tribunal, and whether the application is made by a foreign or international tribunal or any interested person. *Id.*

If the applicant satisfies the above criteria, the court should then determine whether to exercise its discretion to grant the request "in light of the twin aims of the statute to (1) provide efficient means of assistance to participants in international litigation and (2) encourage foreign countries by example to provide similar means of assistance to our courts." *Id.* at 114 (citing *Norex*, 384 F. Supp. 2d at 49). In making this determination, there are four "factors that bear consideration." *Intel*, 542 U.S. at 264. First, "when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for [section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* As the Supreme Court explains in *Intel*, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [section] 1782(a) aid." *Id.* Second, a court presented with a section 1782 discovery application should "take into account the nature of the foreign tri-

bunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* Third, a court should be cognizant of whether a section 1782 discovery request is a concealed "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 265. Last, if a request is "unduly intrusive or burdensome," a court should consider whether to trim it or reject it entirely. *Id.*

"The discretionary guidelines in *Intel* do not command that each factor be weighed equally, nor do they dictate whether any particular factor should take precedent." *In Matter of Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014). These factors are merely designed to "guide" a court tasked with adjudicating a section 1782 discovery application. *See Intel*, 542 U.S. at 247.

## DISCUSSION

As a threshold matter, Respondent concedes that this Court has the authority to grant Petitioners' discovery request—that is, ECP concedes that it is located in this Court's jurisdiction, that the discovery Petitioners seeks is for use in foreign proceedings, and that Petitioners are interested parties in those proceedings. *See* Resp. at 5–6; *see also Norex*, 384 F. Supp. 2d at 49. Accordingly, this Court's analysis will focus solely on whether it should exercise its discretion to grant Petitioners' application. Respondent asserts that the four *Intel* factors counsel against granting Petitioners' application, arguing that the discovery requests are unduly burdensome, would require the improper collection of documents held abroad, are erroneously directed at ECP instead of ECP Africa, reflect an effort on the part of Petitioners to subvert the procedural rules and decisions in Mauritian court, and should be denied because Petitioners willingly submitted themselves to the discovery rules in Uganda and Mauritius by filing suit there. *See* Resp. at 5–6. For the reasons that follow, the Court concludes that the four *Intel* factors weigh in favor of granting Petitioners'

application and will permit Petitioners to seek discovery from ECP subject to certain time and subject-matter restrictions to alleviate the burdensomeness of the requests as originally drafted.

### A.  The Jurisdictional Reach of the Foreign Tribunals

The first discretionary *Intel* factor—whether the person or entity from whom discovery is sought is a participant in the foreign proceedings—weighs in favor of granting Petitioners' application. *Intel*, 542 U.S. at 264.  ECP is not a party in the foreign proceedings; its subsidiary, ECP Africa, is the relevant party.  And while Respondent now argues that seeking discovery from ECP in the United States is effectively the same as seeking discovery from ECP's foreign subsidiary in Mauritius, *see* Resp. at 10–12, the Court finds Respondent's argument unavailing.  ECP and ECP Africa, as Respondent acknowledges, are distinct legal entities.  *See id.* at 11.  Indeed, ECP is a private equity firm that manages and owns less than one percent of the equity in ECP Africa.  *Id.* at 2.  It is incorporated in the District of Columbia, while ECP Africa is incorporated under the laws of Mauritius.  There is no evidence to support a finding that Petitioners are seeking to pierce the corporate veil between ECP and ECP Africa here by forcing ECP to fetch documents in ECP Africa's possession in Mauritius to produce in the United States.[11]  Nor is there any reason to believe that ECP is within the jurisdictional reach of the courts in either Mauritius or Uganda, or that the evidence in ECP's possession is obtainable in the proceedings there absent a section 1782 request.  *Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it . . . .  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [section] 1782(a) aid.");  *see also In re Application for an Order for Judicial Assistance in*

---

[11] To the extent that Petitioners seek discovery through ECP of documents in ECP Africa's possession, their requests are denied.  *See Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 405 (7th Cir. 2004) (denying section 1782 application requiring "apex firm of a holding company" in the United States to import documents in the possession of a foreign subsidiary).

*a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1030–31 (N.D. Ill. 2006) (finding parent company not a participant in foreign proceeding involving wholly-owned subsidiary where parent company was not within foreign tribunal's jurisdiction). Accordingly, the Court finds that ECP is not a participant in the foreign proceedings, and that this *Intel* factor militates in favor of granting Petitioners' application.

**B.    The Nature and Receptivity of the Foreign Tribunals and Character of the Proceedings**

The next *Intel* factor calls for an assessment of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Addressing this last element first, Respondent contends that Petitioners' application should be rejected because Petitioners' requests do not satisfy the Ugandan court's requirement that discovery be "relevant to the suit and essential for the resolution of the issues in dispute," and do not comply with the Mauritian court's rule that discovery cannot be taken "from someone who is not a party to the case." Resp. at 13 (citing declarations from ECP Africa's counsel). These representations, however, are insufficient to warrant denial of Petitioners' application. In order to prevail under this prong, "[t]he party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought." *In re Veiga*, 746 F. Supp. 2d 8, 23–24 (D.D.C. 2010). Courts have found such proof to exist where, for example, a representative of the foreign sovereign or the foreign tribunal itself has made clear its opposition to the petitioner's request. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84–85 (2d Cir. 2004) (finding foreign tribunal unreceptive after receiving "specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny" petitioners discovery request); *In re Microsoft Corp.*, 428 F. Supp. 2d 188,

194 (S.D.N.Y. 2006) (denying discovery sought by petitioners over opposition brief from the foreign tribunal submitted to court). On the other hand, "proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery." *See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006).

Indeed, an analysis of the merits of ECP Africa's counsel's declaration regarding Ugandan and Mauritian law would require this Court to become embroiled in exactly the kind of "legal tug-of-war" that courts should avoid when adjudicating section 1782 applications. *See In re Veiga*, 746 F. Supp. 2d at 24; *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099–1100 (2d Cir. 1995) ("[W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute."); *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 105–06 (D.D.C. 2010) ("In evaluating a tribunal's willingness, courts do not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance." (internal citations and quotation marks omitted)). After all, as the Supreme Court and others have explained, section 1782 does not require that the material sought in the United States be discoverable—or even admissible—in the foreign tribunals. *See Intel*, 542 U.S. at 247 ("[Section] 1782 contains no threshold requirement that evidence sought . . . would be discoverable under the law governing the foreign proceeding."); *see also In re Veiga*, 746 F. Supp. 2d at 18 ("[D]istrict courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding."). Accordingly, having found no "clear and unequivocal indication that the foreign tribunal would

not be receptive to the evidence sought" here, the Court finds that this factor weighs in favor of granting Petitioners' application. *Id.* at 24.

The remaining inquiries relevant to this factor—the nature of the foreign tribunal and the character of the proceedings—do not alter the Court's analysis. This is not, for example, an instance where the parties arrived at the foreign tribunals with "bargained-for expectations" based on a deliberative process concerning the governing procedural process and discovery rules. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106 (finding that the nature of tribunal counsels against granting request where petitioner chose to bring dispute before an ICSID arbitration panel governed by mutually-agreed-upon rules).[12] Nor is there any reason to believe that the foreign proceedings here are the type that would otherwise bar Petitioners from presenting evidence and engaging in discovery. *See Lazaridis*, 760 F. Supp. 2d at 115 (denying section 1782 request where petitioner sought discovery to use in a Greek criminal investigation, which "are left to the discretion of the Greek authorities and provide no private right of action"). And while this section 1782 application is perhaps a bit unusual in that it involves a single application from two Petitioners—an individual and his private investment company—to obtain discovery from ECP to use in two separate but related proceedings—one brought by the individual in Uganda and the other brought by the company in Mauritius—the Court sees no reason why the

---

[12] Respondent's assertion that "[t]he nature of the foreign tribunal weighs against enforcing discovery if the party seeking the discovery had options in selecting the forum for the foreign proceeding" is a truncated characterization of the governing caselaw. Resp. at 15 (quoting *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 223 (D.D.C. 2015)). While true that a member of this Court has previously indicated that the nature of the tribunal weighs against granting a section 1782 request when the petitioner has options in selecting the foreign forum, the Court elaborated on that point in a critical way, explaining that the choice becomes important when the petitioner chooses to bring a foreign action before an arbitration panel where the petitioner was free to negotiate and set the procedural rules for the arbitrators to follow. *See HT S.R.L.*, 125 F. Supp. 3d at 223; *see also In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106. Here, Petitioners were not given the opportunity to bring the foreign proceedings before an arbitration panel governed by procedural rules to which they agreed. Rather, they brought suit against ECP Africa in Uganda and Mauritius because those courts have jurisdiction to adjudicate their claims. Accordingly, the Court finds the analysis in *HT S.R.L.* inapposite here.

dual-nature of this section 1782 application by itself counsels against granting Petitioners' application, particularly in light of the Court's capacity to limit the scope of Petitioners' discovery requests. Accordingly, with respect to the second *Intel* factor, the Court finds that it weighs in favor of granting Petitioners' request.

### C. Circumvention of Foreign Proof-Gathering Restrictions or Other Foreign Policies

The next *Intel* factor instructs the Court to consider whether the Petitioners' section 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. Respondent claims that it does, arguing that Petitioners made the instant application in bad faith because the discovery rules and decisions in the Ugandan and Mauritian courts prohibit the use of discovery that Petitioners now seek, and because Petitioners are requesting this discovery as part of an ongoing effort to "forc[e] ECP Africa to simultaneously defend against an onslaught of international cases with sensational allegations" only to abandon these cases and impede progress when it comes time to pursue the claims. *See* Resp. at 12–13.

With respect to Respondent's first contention, as the Court has already explained, section 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings. *See Intel*, 542 U.S. at 247; *see also In re Veiga*, 746 F. Supp. 2d at 18. Absent clear and authoritative proof from a source other than ECP Africa's lawyers that the foreign tribunals at issue here would refuse the evidence Petitioners seek, the Court is unwilling to reject Petitioners' application for this reason. And while at least one court has expressed reservations when adjudicating a section 1782 application as to whether a petitioner is looking to "jump the gun" on discovery in the underlying foreign suit, *see Norex*, 384 F. Supp. 2d at 54, there is no requirement in

the statute that a petitioner exhaust their discovery options in a foreign forum before seeking discovery here. Indeed, "[c]ourts have refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107 (internal citations and quotation marks omitted); *see also HT S.R.L.*, 125 F. Supp. 3d at 225–26 ("If the material sought is discoverable in the foreign tribunal, litigants are not required to seek discovery through the foreign tribunal prior to requesting through the United States[.]"); *In re Veiga*, 746 F. Supp. 2d at 24 ("Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal.").

Likewise, Respondent's allegations of gamesmanship on the part of Petitioners are unavailing. As evidence of this claim, Respondent points to Petitioner Patel's failure to appear for mediation sessions in Uganda and Petitioner Barnwell's amendment to its pleadings in the Mauritian case. *See* Resp. at 13. To the extent that the Court should consider these claims in deciding whether to grant Petitioners' application, the undersigned finds that the evidence provided by Respondent does not establish that Petitioners "are intent on forcing ECP Africa to simultaneously defend against an onslaught" of sensationalized international litigation while also hoping to "frivolously delay" that litigation. *See id.* at 13. What is more, Petitioners have made an initial showing that the discovery they seek is, at least in part, not frivolous. Indeed, in their reply brief, Petitioners allege that four employees of ECP—not ECP Africa—placed on the board of directors of Spencon have been acting in those positions since early 2014, and provide evidence to suggest that these employees used ECP email connected to servers in the United States to discuss and conduct business with respect to Spencon. *See* Reply. at 4–6. In any event, the Court finds no reason to believe

that Petitioners are seeking to do anything other than obtain discovery in the possession of a non-party located in the District of Columbia to use in foreign litigation, and thus concludes that this factor, too, militates in favor of granting Petitioners' application.

### D. The Scope of Petitioners' Discovery Request

The fourth and final *Intel* factor reminds courts that "unduly intrusive or burdensome requests [made under section 1782] may be rejected or trimmed." *Intel*, 542 U.S. at 265 (citing *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir.1998)). To that end, the Court finds that Petitioners have proposed satisfactory limitations to the subject matter and scope of their original discovery requests. Specifically, in their reply brief and at the hearing in this matter, Petitioners explained that they are only seeking discovery related to four ECP employees—Carolyn Campbell, Andrew Brown, Bryce Fort, and Namita Shah—in their capacity as directors of Spencon beginning on March 7, 2014. *See* Reply at 4–6. Petitioners have provided support for their assertion that these employees should have knowledge about business decisions related to Spencon and that they have used ECP's email servers, which are located in the United States, to communicate electronically about ECP's role in managing Spencon. *Id.* at 4–6. Indeed, at the hearing in this matter, counsel for Respondent conceded that ECP's email server is accessible from the United States, meaning that ECP can search the four employees' electronic communications from its office in this district. *See* TR. at 57:20–58:6. Moreover, counsel for Respondent conceded that ECP has possession, custody, and control of its employees' work-related electronic communications, and that Petitioners' proposed limitations to their requests rendered them more reasonable. *Id.* at 49:20–50:8, 92:24–93:6. Accordingly, so long as Petitioners' discovery requests are generally limited in time

to seek the production of documents from March 7, 2014 and onward,[13] and so long as Petitioners' discovery requests are limited in scope to seek the production of communications and documents related to the four identified employees in the possession, custody, and control of ECP, the Court is satisfied that those requests are not unduly intrusive or burdensome.

Though Respondent's counsel conceded that these temporal and subject-matter restrictions mitigated a number of Respondent's concerns with Petitioners' discovery requests, he also raised objections to the geographic reach of Petitioners' application. As counsel for Petitioners indicated, in addition to the four employees' electronic communications accessible from ECP's office in the District of Columbia, Petitioners seek any responsive, physical documents that are in the custody, possession, and control of ECP by way of those four employees. *See* Reply at 9–11; *see also* TR. at 72:1–79:9. According to Respondent, however, only one of the four employees is in the United States—two others are located in Kenya and one is a citizen of the United Kingdom living in France. *See id.* at 93:19–94:4. Petitioners are thus requesting that these ECP employees, regardless of whether they are located in the United States or a foreign jurisdiction, gather any physical documents in their possession as employees of ECP related to Petitioners' application and send them to ECP's Washington, D.C. office for a responsiveness review. *See id.* at 77:13–79:9.

As another member of this Court has explained, the body of available caselaw "suggests that [section] 1782 is not properly used to seek documents held outside the United States as a general matter." *Norex*, 384 F. Supp. 2d at 50–52 (surveying cases from Second, Seventh, and Ninth Circuits). Since this Court's decision in *Norex*, a split in authority has developed over whether section 1782 authorizes the discovery of documents held outside the United States, albeit

---

[13] Consistent with the parties' representations at the hearing, and as the Court will explain more in the Order accompanying this Memorandum Opinion, a few of Petitioners' discovery requests call for the production of documents from either before or after March 2014.

with an abundance of authority finding no express authorization.  *See In re Veiga*, 746 F. Supp. 2d at 25 (comparing *In re Application of Eli Lilly & Co.*, 2010 WL 2509133, at *4 (D. Conn. June 15, 2010) and *Gemeinshcaftspraxis*, 2006 WL 3844464, at *5 with *In re Application of Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) and *In re Application of Microsoft Corp.*, 428 F. Supp. 2d at 194 n.5); *see also In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 n.43 (N.D. Cal. 2016) (collecting cases rejecting an extraterritorial application of section 1782). Indeed, "despite [section 1782's] unrestrictive language, there is reason to think [based on statutory history] that Congress intended to reach only evidence located within the United States." *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997); *see also Kestrel*, 362 F.3d at 404 (finding "some support" for the notion that section 1782 does not permit a judge "to require evidence to be imported from a foreign nation so that it may be handed over here and then exported").  While neither the Supreme Court nor the D.C. Circuit has ruled definitively on this issue, every member of this Court to address it has at least cautioned against the extraterritorial application of section 1782.  *See Norex*, 384 F. Supp. 2d at 50–55 ("[The relevant cases] suggest that extraterritorial application of [section] 1782 would not be in keeping with the aims of the statute, and indeed that documents held outside the United States are beyond the statute's intended reach."); *see also In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 297–98 (D.D.C. 2011) (finding no precedent for a "*per se* bar to the discovery of documents outside of the United States," but noting that the foreign location of information militates against granting application); *In re Veiga*, 746 F. Supp. 2d at 25 ("Even assuming there is no absolute bar to the discovery of documents located outside the United States, there is no doubt that courts may exercise their discretion to decline to order the production of documents abroad . . . .").  This reticence to apply section 1782 to reach discovery located abroad is consistent with the Supreme Court's implicit assumption

in *Intel* "that evidence discoverable under [section] 1782(a) would be located in the United States." *In re Godfrey*, 526 F. Supp. 2d at 423–24 (citing *Intel*, 542 U.S. at 260–62, 264).

To be sure, the plain language of section 1782 contains no such limitation. Indeed, it explicitly empowers this Court to allow discovery to be taken and produced "in accordance with the Federal Rules of Civil Procedure." 18 U.S.C. § 1782(a). And the Federal Rules governing subpoenas and the production of documents contain no geographical limitations with respect to where discoverable information can be located, requiring simply that a respondent produce any relevant documents, electronically-stored information, or tangible items in their "possession, custody, or control[.]" *See* Fed. R. Civ. P. 34(a)(1), 45(a)(1)(A)(iii), 45(c)(2)(A).[14] Absent an invocation of privilege or concerns regarding proprietary information or undue burden, the relevant Federal Rules contain no other geographic limitations regarding discoverable information. *See id.* at 26(b)(1), 45(d)(1) and (3), 45(e)(1)(D). Accordingly, reading section 1782 to contain a *per se* bar on the discovery of material located outside the United States would impermissibly and "categorically restrict the discretion Congress afforded federal courts" by enacting the statute. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199–1200 (11th Cir. 2016) ("At bottom, . . . the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under [section] 1782."); *see also Intel*, 542 U.S. at 260 ("If Congress had intended to impose such a sweeping restriction on the district court's discretion, . . . it would have included statutory language to that effect." (internal quotation marks and citation omitted)).

---

[14] The only geographic limitation in Federal Rule 45, which deals with subpoenas, concerns the location of the respondent's compliance with the subpoena, not the location of any information for production. *See* Fed. R. Civ. P. 45(c)(1)(A).

Thus, while the international location of documents sought in a section 1782 application has been interpreted by other members of this Court to be a discretionary factor that weighs against granting the petitioner's application, the Court sees no reason to reject Petitioners' application out of hand here simply because it might require the production of documents currently located in Kenya or France.  Of course, to the extent that Petitioners are seeking physical documents from ECP that are in the possession of ECP Africa and located in the jurisdiction of the Ugandan or Mauritian courts, their application will be denied.  *See Intel*, 542 U.S. at 264 (explaining that section 1782 is intended to assist international litigation by suppling discovery from non-parties outside the foreign court's jurisdictional reach); *In re Application of RSM Production Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 907 (S.D. Tex. 2016) ("[T]he court does not believe it appropriate to order the parent company to produce documents and deponents from the Israeli office of its subsidiary [for use in Israeli proceedings].").  But that is not the case here.  Petitioners are not seeking to strong-arm ECP into obtaining documents from its subsidiary in Mauritius and producing those documents here, but, rather, are seeking to obtain documentary evidence directly from ECP employees, some of whom happen to be located abroad.

Moreover, Respondent does not appear to dispute that any physical documents these four individuals might possess as employees of ECP, regardless of where they are located, fall within the company's "possession, custody, or control" as contemplated by the Federal Rules of Civil Procedure.  Fed .R. Civ. P. 34(a)(1), 45(a)(1)(A)(iii).  Nor could it.  "Control is the test with regard to the production of documents and is defined not only as possession, but as the legal right to obtain the documents on demand."  *Norex*, 384 F. Supp. 2d at 56 (internal quotation marks and citations omitted).  It "does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority, or practical ability to obtain the

documents from a non-party to the action.'" *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (quoting *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)). Under this framework, "[c]ourts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447–49 (S.D.N.Y. 2011) (collecting cases). Based on the information offered by Petitioners, the Court thus finds that they have satisfied their burden of establishing that Respondent has control over any responsive documents in the four employees' possession. *Norex*, 384 F. Supp. 2d at 56 ("The burden of establishing control over the documents sought is on the party seeking production." (internal quotation marks and citation omitted)). The Court also finds that the burden imposed on Respondent by requiring the four ECP employees to search for and provide to ECP in Washington, D.C. any physical documents responsive to Petitioners' tailored discovery requests is too minor to warrant denying Petitioners' application. Accordingly, to the extent that ECP employees Campbell, Brown, Fort, and Shah are in possession of documents responsive to Petitioners' discovery requests, they must provide those documents to ECP for potential production in compliance with Petitioners' instant application.

## CONCLUSION

Based on the above, the Court will grant Petitioners section 1782 application and instruct Respondent to comply with Petitioners' discovery requests. Consistent with the discussion had on the record at the April 25, 2017 hearing in this matter, the Court will impose time and subject-matter restrictions to be explained in the Order accompanying this Memorandum Opinion.

*       *       *       *       *

The parties are hereby advised that, under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned's ruling must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Memorandum Opinion and accompanying Order. The written objections must specifically identify the portion of the Memorandum Opinion and Order to which objection is made and the basis for such objections. *See* LCvR 72.2(b).

Date: July 13, 2017

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE